# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Rebecca R. Pallmeyer | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 8855 | **DATE** | 9/22/2004 |
| **CASE TITLE** | Bernita Artis vs. Palos Community Hospital | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
  ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion And order. Defendant's motion for summary judgment (Doc. No. 9-1) is granted. Judgment is entered in favor of Defendant Palos Community Hospital and against Plaintiff Bernita Artis.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | 2 | Document Number |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | SEP 2 3 2004 | |
| | Notified counsel by telephone. | | date docketed | 27 |
| | Docketing to mail notices. | | docketing deputy initials | |
| ✓ | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | 9/22/2004 | |
| | ETV | courtroom deputy's initials | date mailed notice ETV | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| BERNITA ARTIS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 02 C 8855 |
| ) | |
| PALOS COMMUNITY HOSPITAL, ) | Judge Rebecca R. Pallmeyer |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

SEP 2 3 2004

Plaintiff Bernita Artis worked as a certified nursing assistant for Palos Community Hospital until a wrist injury rendered her temporarily unable to continue. She continued for several months on light duty but was not able to obtain another permanent position with the hospital and was discharged in December 2000. In this lawsuit, Artis alleges that her termination was in violation of the Family & Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601 *et seq.*, and that she was discharged in retaliation for having filed an application with the Illinois Industrial Commission, i.e., a worker's compensation claim. Defendant moves for summary judgment, arguing that the undisputed facts show that there was no violation of the FMLA and that her discharge was unrelated to her filing of a workers' compensation claim. For the reasons discussed below, the court grants summary judgment in favor of Defendant.

## FACTUAL BACKGROUND

Plaintiff was hired by the Defendant, Palos Community Hospital, as a certified nursing assistant in March of 1999 and worked there until December of 2000. (Defendant's Statement of Material Facts (hereinafter, "Def.'s 56.1") ¶ 4.) On June 27, 2000, Plaintiff injured her left wrist while attempting to prevent a patient from falling out of bed. (*Id.* ¶ 5; Plaintiff's Statement of Additional Material Facts (hereinafter, "Pl.'s 56.1 Stmt.") ¶ 4.) Following instructions from the charge nurse, Plaintiff went to the Hospital's emergency room, where she was diagnosed with



inflammation and swelling. (Pl. 56.1 Stmt. ¶ 13; Def.'s 56.1 ¶ 6.) Plaintiff took at least three days off work to recover from the injury and then returned to work in the Hospital's Human Resources Department on temporary limited duty ("TLD") on July 5, 2000. (Pl.'s 56.1 Stmt. ¶ 9; Def.'s 56.1 ¶ 7.)

Plaintiff contends that on July 5, 2000, she informed Dorothy Morande of Employee Health Services that she was not fully recovered from her injury and needed more time off, but Ms. Morande responded that if Plaintiff did not start TLD she would lose her job. (Plaintiff Aff. ¶ 13, Ex. 17 to Pl.'s 56.1 Stmt.) The Hospital denies this conversation ever took place, noting that in her own deposition, Plaintiff testified she was put off work for three days until she saw Ms. Morande, but then corrected herself and said it was actually someone named "Judy" with whom she met. (Defendant's Response to Plaintiff's Statement of Additional Material Facts (hereinafter, "Def.'s Resp.") ¶ 15; Plaintiff Dep., at 47.) In her testimony, Plaintiff made no mention of an ultimatum issued by anyone at the Hospital.

Plaintiff also argues that she was never given information as to her FMLA leave rights and was never advised that TLD was voluntary or that it was in lieu of FMLA leave. (Plaintiff Aff. ¶ 16, Ex. 17 to Pl.'s 56.1 Stmt.) The parties agree that Plaintiff was given some information concerning the nature of the TLD program, specifically a handout entitled "Temporary Limited Duty, Your Questions Answered," and a "Statement of Policy" relating to TLD. (Plaintiff Dep., at 50-52; Def.'s 56.1 ¶ 8.) The policy statement explains that "[i]f an employee elects not to return to the TLD assignment, available vacation and holiday hours will be paid, but the employee will not be eligible for Worker's Compensation or sick time benefits. . . . If the employee's position has been filled when the employee is cleared for regular duties, every effort will be made to assist the employee to find a suitable position." (Statement of Policy, Ex. 4 to Plaintiff Dep., at 1, 2.) The stated purpose for the policy is "[t]o provide a program through which an employee who is temporarily disabled can readjust to the working environment" while working in some capacity until he or she

is able to resume his or her job. (*Id.* at 1.) The policy statement also refers to the FMLA, explaining that "an employee who qualifies under the [FMLA] . . . will be given job protection of twelve weeks from the last day worked in his/her regular position." (*Id.* at 2.)

Plaintiff claims that the employee handbook is silent on the matter of FMLA rights, but the court notes that the handbook does address the matter, explaining in the Leave of Absence section that if "your leave qualifies under the [FMLA], job protection of 12 weeks per year will be provided. This means that, on return from leave within this period, you will be restored to the position you held or an equivalent position." (Employee Handbook, Ex. 8 to Pl.'s 56.1 Stmt., at 24.) Plaintiff also claims that the Hospital's Employee Handbook, FMLA poster, Leave of Absence Policy 951.412, and TLD notice all fail to inform employees that light duty work is in lieu of FMLA leave and voluntary. (Pl.'s 56.1 Stmt. ¶ 32; Ex.'s 7-10, 12 to Pl.'s 56.1 Stmt.) Defendant denies this assertion in part, pointing out that the pages from the employee handbook cited by Plaintiff do discuss FMLA leave. The Department of Labor poster used by Defendant is a government form; it makes no mention of the relationship between TLD and FMLA leave. (Ex. 12 to Pl.'s 56.1 Stmt.) Defendant specifically denies that assignment to TLD is involuntary, and notes that the TLD policy explicitly states that employees may choose not to return to light duty, at the price of losing eligibility for worker's compensation or sick time benefits.[1] (Def.'s Resp. ¶ 32; Statement of Policy, Ex. 4 to Plaintiff Dep.) The TLD policy also states that if the employee's position has been filled when he or she is "cleared for regular duties, every effort will be made to assist the employee to find a suitable position." (Statement of Policy, Ex. 4 to Plaintiff Dep.)

---

[1] This language makes no mention of the possibility of FMLA leave for a worker who suffers from a serious medical condition; the Policy might therefore benefit from a revision. Read in context, it appears that this provision addresses the circumstance in which a temporarily disabled worker prefers to remain employed but nevertheless declines the particular TLD assignment. As noted, the following page of the Policy does refer explicitly to FMLA leave, stating, "an employee who qualifies under the Family Medical Leave Act of 1993 (FMLA), will be given job protection of twelve weeks from the last day worked in his/her regular position."

3

Defendant contends that employees are given a choice between FMLA leave and TLD, and inevitably choose light duty because it allows them to continue making money while they recover from their injury/illness. (Def.'s Resp. ¶ 29.) Defendant has provided no evidence to support this contention besides the statement of William Cleary, Director of Human Resources at the Hospital, who declared that an employee in the Plaintiff's position "has a choice between temporary limited duty . . . and a leave of absence . . . one or the other." (*Id.*; Cleary Dep., at 33.) In asserting that employees are given a choice, Cleary does not specify how employees were expected to know about this choice, and does not state that Plaintiff herself was given full information about the two options. There is also no evidence demonstrating how many employees were offered a choice between FMLA leave and TLD, and voluntarily chose light duty.

As a result of her wrist injury, Plaintiff underwent surgery on September 8, 2000 and was again forced to miss at least three days of work. (Pl.'s 56.1 Stmt. ¶¶ 5, 10.) At the time of both the June accident and the September surgery, Plaintiff had worked more than 1,250 hours in the preceding twelve-month period. (*Id.* ¶¶ 7-8.) When sufficiently recovered from the surgery, Plaintiff returned to TLD work in the Human Resources Department until she was placed on job search leave of absence in November of 2000. (Def.'s 56.1 ¶ 14.) Plaintiff admits that she never requested any other leave of absence and never requested FMLA leave. (*Id.* ¶ 23; Plaintiff Dep., at 69.)

In a memorandum dated August 28, 2000, Dorothy Morande informed Plaintiff that her job protection would end on September 20, 2000 and that her nursing position might be filled. (*Id.* ¶ 10, Ex. 5 to Plaintiff Dep.) Plaintiff admits that she was aware throughout the fall of 2000 that she was expected to look for alternate employment at the Hospital. (Def.'s 56.1 ¶ 11; Plaintiff Dep., at 55-56.) Plaintiff continued to work in the TLD program through the fall until November 14, when she was sent another memorandum from Dorothy Morande informing her that, because she had been cleared for work effective on November 20, she would need to start looking for another job

in the Hospital on November 21. (Def.'s 56.1 ¶ 12; Ex. 6 to Plaintiff Dep.) The letter also advised her that if she were unable to find a new position by December 15, her employment with the hospital would cease. (Def.'s 56.1 ¶ 13; Ex. 6 to Plaintiff Dep.) Because Plaintiff's original nursing job had been filled, she was placed on job search leave of absence on November 21 while she searched for a replacement position. (Def.'s 56.1 ¶ 14; Pl.'s 56.1 Stmt. ¶ 34.) As of November 21, Plaintiff had worked 1,159 hours in the previous twelve months and was fully able to return to her original nursing duties. (Def.'s 56.1 ¶¶ 15, 25.) Plaintiff never returned to her original certified nursing assistant job at the hospital. (Id. ¶ 9.)

The Hospital does not ordinarily advise employees on a job search leave of absence about any job openings; instead, the employee has the responsibility of seeking out and applying for such positions on her own. (Id. ¶ 20.) Job openings are posted on a cafeteria bulletin board, and employees apply by placing bids on vacant positions. (Id.) While on her job search leave of absence, Plaintiff put in a written job bid for a Phlebotomist position and a Home Health Care Assistant position, and claims to have orally requested numerous other positions. She was not interviewed or hired for any of these slots. (Pl.'s 56.1 Stmt. ¶ 19.)

Plaintiff wrote to the Hospital sometime in December, stating that she would be returning to work on December 15. (Def.'s 56.1 ¶ 18; Ex. 7 to Plaintiff Dep.) Plaintiff testified that in writing the letter, "I followed all the [Hospital's] instructions. I just wanted to know what my status was at work. I hadn't found anything within the hospital." (Def.'s 56.1 ¶ 19; Ex. 7 to Plaintiff Dep.) On December 16, 2000, Ellen Disbrow from Human Resources wrote Plaintiff to inform her that because her "job search leave of absence had reached the maximum of four weeks," and she had failed to find another position at the Hospital, her employment at the hospital would be terminated. (Ex. 8 to Plaintiff Dep.; Def.'s 56.1 ¶ 20.)

Just two weeks earlier, on December 1, 2000, Plaintiff had filed an Application for Adjustment of Claim with the Illinois Industrial Commission, seeking compensation for the June

5

work accident. (Pl.'s 56.1 Stmt. ¶ 35; Def.'s 56.1 ¶ 16.) Mr. Cleary claims that the Hospital did not receive notice of the application until December 8, 2000. (Def.'s 56.1 ¶ 16; Cleary Decl. ¶ 7.) As a result of the application, on September 18, 2001, Plaintiff received a settlement on the worker's compensation claim of $7,449, after deduction of attorney's fees. (Def.'s 56.1 ¶ 17; Plaintiff Dep., at 67.) Plaintiff alleges her termination was, at least in part, retaliation for having filed this claim. (Compl. ¶ 13.)

In her deposition, Plaintiff's stated reasons for suing the Hospital under the FMLA are, "I believe if I had that protection [FMLA job protection], I would have my job. My job would have been secured." (Def.'s 56.1 ¶ 23; Plaintiff Dep., at 69.) Plaintiff admits that she never specifically requested FMLA leave, but does contend that she asked for time off to recover from both the June accident and the September surgery. (Plaintiff Dep., at 69; Pl.'s 56.1 Stmt. ¶¶ 13-14.) Defendant denies that Plaintiff ever asked for "leave," noting that she was off work for just three days following the wrist injury. (Def.'s Resp. ¶¶ 13-14.) In her affidavit, Plaintiff also contends that Mr. Cleary told her she could come back to work, and that it was her understanding she would be returned to her nursing job after she was released to full work by her doctor. (Plaintiff Aff. ¶¶ 15, 17.) Defendant argues that Plaintiff was fully aware that her nursing job would be filled after September 20. (Def.'s Resp. ¶ 17.) Plaintiff finally contends that department supervisors at the Hospital are trained to tell an employee that she may be eligible for FMLA leave if advised by the employee of a potential FMLA qualifying event, but that her own supervisors failed to advise Plaintiff of her FMLA eligibility. (Pl.'s 56.1 Stmt. ¶ 23; Cleary Dep., at 10-11.) According to Defendant, the Hospital does not actively seek out FMLA-eligible individuals, but supervisors are instructed "under family medical leave that if they are advised by an employee that the employee let's say has an . . . illness, then the supervisors are trained to say you may be eligible for family medical leave." (Def.'s Resp. ¶ 23; Cleary Dep., at 11-12.) Defendant does not contend that this policy was adhered to in this case, but argues that the fact is immaterial. (Def.'s Resp. ¶ 23.)

6

## DISCUSSION

I.  **Standard of Review**

Defendant moves for summary judgment on Plaintiff's claims. Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). There is no genuine issue of material fact unless "a reasonable jury could find for the party opposing the motion based on the record as a whole." *Pipitone v. United States*, 180 F.3d 859, 861 (7th Cir. 1999) (internal quotations and citations omitted). The court must construe all facts in the light most favorable to the non-movant and draw all justifiable inferences in favor of that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

Plaintiff brings two counts against Defendant. Count I alleges that Defendant violated her FMLA rights. (Compl. ¶¶ 7-10.) Count II asserts that Defendant terminated Plaintiff in retaliation for Plaintiff having filed a worker's compensation claim with the Illinois Industrial Commission. (*Id.* ¶ 13.) The court addresses each claim in turn.

II.  **Family & Medical Leave Act Claim**

Plaintiff alleges that she was entitled to FMLA leave within the meaning of 29 U.S.C. § 2612(a)(1), and that she lost pay as a direct result of Defendant's failure to place her on leave. (Compl. ¶¶ 9-10.) In her brief, she acknowledges that FMLA leave is unpaid, but argues that her complaint "clearly is referring to subsequent wages and thus alleging that she lost her position in violation of the FMLA." (Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment (hereinafter, "Pl.'s Mem."), at 1.) Plaintiff's brief further asserts that Defendant was put on notice of her need for FMLA leave and that Defendant willfully violated the FMLA by

denying FMLA leave, inducing and coercing Plaintiff to accept temporary light duty ("TLD"), and failing to include sufficient notice regarding FMLA rights. (*Id.* at 2-3.) Plaintiff further alleges that such violations constituted a willful interference with her rights. (*Id.* at 1-2.)

The FMLA provides job security to employees who miss work because of their own illnesses, to care for family members who are ill, or to care for new babies. 29 U.S.C. § 2612. Eligible employees are covered under the Act for up to twelve weeks of leave each year, and the Act guarantees reinstatement to the employee's original job when work is resumed. 29 U.S.C. §§ 2612(a)(1), 2614(a)(1). Employees who seek FMLA protection for their own illness must have worked for at least 1,250 hours in the previous twelve-month period, and possess a "serious health condition" as defined by the FMLA regulations. 29 U.S.C. § 2611(2). For purposes of summary judgment, the court is satisfied that Plaintiff may be classified as having a "serious health condition" following both her June 2000 wrist injury and September 2000 surgery under the Act, as she was incapacitated for more than three consecutive days, and required continuing treatment by a health care provider. 29 C.F.R. § 825.114. Because Plaintiff had also worked more than 1,250 hours in the twelve months preceding both the wrist injury and the surgery, she would be an FMLA-eligible employee at both of these times. (Pl.'s 56.1 Stmt. ¶¶ 7-8; Pl.'s Mem., at 5.) The FMLA makes it unlawful for an employer to interfere with an eligible employee's exercise or attempted exercise of rights granted to her by the Act. 29 U.S.C. § 2615(a). As Plaintiff was an FMLA-eligible employee following her injury and surgery, the remaining issue is thus whether Defendant interfered with Plaintiff's FMLA rights in violation of the Act.

Plaintiff asserts that advising Defendant of her injury, and her later need for surgery, was sufficient to put Defendant on notice that FMLA leave was needed. (Pl.'s Mem., at 6.) An employee does not qualify for FMLA protection until she has provided the employer with "enough information to put the employer on notice that FMLA-qualifying leave is needed." *Stoops v. One Call Communications, Inc.*, 141 F.3d 309, 312 (7th Cir. 1998). In putting the employer on notice

of the need for FMLA leave, the employee does not have to mention the FMLA or demand its benefits; the employee can even be completely ignorant of the Act. 29 C.F.R. § 825.208(2); *Byrne v. Avon Prods., Inc.*, 328 F.3d 379, 382 (7th Cir.), *cert. denied*, 124 S.Ct. 327 (2003). When an employee provides notice that FMLA leave is needed, the employer is required to investigate further if it needs additional information to determine if such leave is appropriate. 29 C.F.R. §§ 825.208(a), 825.303(b); *Stoops*, 141 F.3d at 312. Plaintiff argues that Defendant was put on notice of the potential need for FMLA leave when Plaintiff informed the Hospital of her need for time off following both the June 2000 wrist injury and the September 2000 surgery. (Pl.'s Mem., at 6-7.) She further claims that this information was sufficient to trigger an investigation by Defendant into the need for FMLA leave, and notes that department supervisors are expected to tell employees that they may qualify for FMLA leave if advised of a potential FMLA-qualifying event. (*Id.* at 7; Cleary Dep., at 11-12.) Plaintiff finally notes that Defendant's policy clearly states that employees can be placed on leave even if they do not explicitly ask for it. (Pl.'s Mem., at 7.)

In Plaintiff's view, these facts establish that Defendant violated the FMLA in two ways. First, Defendant denied Plaintiff FMLA leave following her injury. Alternatively, Plaintiff argues that she was coerced into accepting a limited duty assignment in lieu of FMLA leave.

The first of these arguments requires little discussion. In support of her notion that Defendant willfully denied her FMLA leave, Plaintiff merely recounts the argument that she put the Defendant on notice of the need for leave and that such notice was sufficient to trigger an investigation by Defendant. (Pl.'s Mem., at 7-9.) She does not suggest that Defendant ever intentionally denied a request for FMLA leave, and she admitted in her deposition that she never made a request for leave. (Plaintiff Dep., at 69.) Plaintiff also has not asserted that she was denied time off to recover from her June wrist injury and September surgery. Her affidavit merely states that after both the accident and the surgery she "was incapacitated and unable to work for more than three consecutive calendar days, and could not perform the essential functions of my

9

job as a Certified Nursing Assistant," and that she asked for time off to recover. (Plaintiff Aff. ¶¶ 8, 12, Ex. 17 to Pl.'s 56.1 Stmt.) Plaintiff further testified that she in fact "was put off work for about three days" following the original wrist injury in June of 2000. (Plaintiff Dep., at 47-48.) She remained on the hospital's payroll, however. The fact that Plaintiff continued working, albeit on limited duty, militates against the conclusion that the Defendant knew of her need for FMLA leave. Indeed, Plaintiff did not and does not now assert that she was unable to work at all after the injury.

Plaintiff argues, alternatively, that Defendant violated the Act by coercing her to accept temporary light duty in lieu of FMLA leave. (Pl.'s Mem., at 10.) Regulations interpreting the FMLA bar an employer from "interfering with, restraining, or denying the exercise of (or attempts to exercise) any right provided by the [FMLA]." 29 C.F.R. § 825.220(a)(1). Examples of interference with FMLA rights include "refusing to authorize FMLA leave," "discouraging an employee from using such leave," and manipulation by an employer to avoid FMLA duties, such as "changing the essential functions of the job to preclude the taking of leave." 29 C.F.R. § 825.220(b)(2). While "employees cannot 'trade off' the right to take FMLA leave against some other benefit offered by the employer," the regulations do contemplate situations where, as in this case, an employee is not ready to return to her regular job, but can perform light duty work. 29 C.F.R. 825.220(d). Under such circumstances, the FMLA is satisfied so long as acceptance of light duty work is "voluntary and uncoerced," and the employee's regular job is held open for twelve weeks, regardless of whether she spends those twelve weeks on light duty, unpaid leave, or some combination. *Id.*

Plaintiff suggests that her acceptance of limited duty was coerced because Defendant failed to advise her of her FMLA leave rights and failed to explain that TLD was voluntary and in place of FMLA leave. (Pl.'s Mem., at 10.) In her affidavit, Plaintiff asserts that Dorothy Morande of Employment Health Services threatened to terminate her if she did not accept transfer to light duty on July 5, 2000. (Plaintiff Aff. ¶ 13, Ex. 17 to Pl.'s 56.1 Stmt.)

The evidence that would support the theory that Plaintiff's acceptance of light duty was not

10

voluntary is thin. First, in response to specific and repeated questions at her deposition concerning the grounds for her FMLA claim, Plaintiff made no mention of coercion.[2] She admitted that she never asked for leave and that she was given information as to the nature of the Hospital's TLD program. (Def.'s 56.1 ¶¶ 8, 24; Plaintiff Dep., at 50-51, 69.) The TLD policy that Plaintiff received does mention FMLA leave and presents limited duty as an option for the employee rather than as mandatory: "If an employee *elects not to return* to the TLD assignment, available vacation and holiday hours will not be paid, but the employee will not be eligible for Worker's Compensation or sick time benefits." (Ex. 4 to Plaintiff Dep.) (Emphasis added).

William Cleary testified that when faced with a serious health condition, Hospital employees are given a choice between paid light duty work and unpaid leave (except for remaining vacation and sick days), and almost all choose to take a light duty position as it allows them to keep earning money while they recover. (Cleary Dep., at 31-35.) No witness testified that Plaintiff herself was offered such a choice, however. Nor did Defendant offer evidentiary support for its apparent theory that, given a choice between light duty on full pay and leave without pay, any employee capable of light duty work would opt for it. The court concludes there is a dispute of material fact concerning this issue.

Even if the court were to resolve the matter in favor of Plaintiff, however, the court

---

[2] Except under limited circumstances, an affiant may not contradict her deposition testimony to establish a disputed issue of fact. *Adusumilli v. City of Chicago*, 164 F.3d 353, 360 (7th Cir. 1998). Plaintiff made two statements in her deposition that arguably contradict her allegations regarding Ms. Morande. First, when asked how long she was put off work following the work accident, Plaintiff responded, "At that time, I don't remember. I think it was for three days until I saw Dorothy Morande, the lady that works in the human resource office. Her name is Judy – no, Judy. I'm sorry, her name is Judy." (Plaintiff Dep., at 47.) This confusing answer seems to infer that it was not Ms. Morande who Plaintiff first saw in the relevant period following her accident and before her assignment to temporary light duty. Later, when questioned about the date on which she started TLD, Plaintiff made no mention of Ms. Morande or of any threat. (*Id.* at 48-50.) Finally, when asked three times if there were any other reasons why Plaintiff was suing under FMLA, Plaintiff did not mention coercion, did not mention Ms. Morande, and did not mention any threat or pressure to begin TLD work. (*Id.* at 69-71.)

11

concludes she will not be able to establish a deprivation of rights protected by the FMLA. Assuming that Plaintiff would have preferred unpaid FMLA leave to fully-paid limited duty, the fact remains that she was accorded a full twelve weeks of job protection, from June 27 to September 20, 2000. Under relevant regulations, an employee who accepts light duty must retain the "right to restoration to the same or an equivalent position . . . until 12 weeks have passed within the 12-month period, including all FMLA leave taken and the period of 'light duty.'" 29 C.F.R. § 825.220(d). The Hospital's TLD policy adheres to this requirement; it provides: "In accordance with hospital policy for Leave of Absence, an employee who qualifies under the Family Medical Leave Act of 1993 (FMLA) will be given job protection of twelve weeks from the last day worked in his/her regular position." (Ex. 9 to Pl.'s 56.1 Stmt.) Under the regulations, whether on FMLA leave or light duty, an employee who is unable to resume her original position after twelve weeks has no further protection under FMLA. It is undisputed that Plaintiff here was not cleared to return to her CNA position until November 20, 2000, more than twenty weeks after she was injured and began light duty. (Ex. 6 to Plaintiff Dep.) Even on that date, she was not terminated; instead, Defendant gave her an additional four weeks of job search leave to find a replacement position in the Hospital. (*Id.*) The Defendant had no duty to give her the nursing job back and was justified in terminating her at any time following September 20.

Plaintiff is reduced to arguing that on June 27, 2000 she should have been granted unpaid leave (which she never requested) and been given over twenty weeks of job protection until November of 2000. Instead, she was given temporary light duty work with full pay and benefits and received substantially more than the FMLA-prescribed twelve weeks of protection. (Defendant's Reply Brief in Support of its Motion for Summary Judgment, at 11.) If the court were to resolve disputed facts in her favor, the undesirable conclusion would be that Defendant acted improperly only in continuing to employ and pay Plaintiff.

At oral argument on this motion, the court briefly addressed a theory of recovery that

12

Plaintiff arguably could have, but did not advance: that by depriving her of unpaid leave, the Hospital prevented her from recovering within twelve weeks of her June 2000 injury. Importantly, Plaintiff herself has never suggested that, had she taken twelve weeks without pay, rather than returning to a light duty assignment, she would have recovered fully from her wrist injury. Nor does any evidence in the record support such a theory. Neither side has offered any evidence concerning the circumstances in which she was initially transferred to light duty in July, but the record does contain her doctor's recommendation that she begin light duty work two weeks after her surgery in September. (Semba Progress Notes, Ex. 14 to Pl.'s 56.1 Stmt., at 6.) The doctor did not state then, nor has Plaintiff offered any expert opinion now, that the light duty work she performed prevented or delayed the healing process. Nor is there any evidence that Plaintiff herself ever expressed unwillingness or inability to perform the light duty assignment.

Plaintiff's final argument is that Defendant's lack of notice and guidance in its employee handbook, policies, poster, and brochure that the TLD program was voluntary and in place of FMLA leave "constitutes a willful interference and restraint of plaintiff's FMLA rights." (Pl.'s Mem., at 11.) Plaintiff concedes that the only statutory notice obligation is that employers post a Department of Labor poster, an obligation that she admits the Hospital met. (Pl.'s Mem., at 11, citing 29 C.F.R. § 825.300(a); see also 29 U.S.C. § 2619.) FMLA-covered employers are further required to include information on FMLA rights in any employment handbooks or notices. 29 C.F.R. § 825.301(a)(1). Defendant appears to have fulfilled these additional notice requirements, as well. First, the Hospital included information on FMLA rights in its Employee Handbook. (Ex. 8 to Pl.'s 56.1 Stmt.) Second, TLD policy notices discuss FMLA job protection. (Ex. 9 to Pl.'s 56.1 Stmt.) Third, the Hospital Leave of Absence brochure outlines the FMLA and who is eligible. (Ex. 11 to Pl.'s 56.1 Stmt.) While none of these resources explain specifically that TLD work is in lieu of FMLA leave, the court concludes that the absence of such an explanation does not violate this regulation. Plaintiff also admits that Hospital staff explained the TLD program to her. (Plaintiff Dep., at 50-52.) Plaintiff has

13

not established that the Defendant failed to fulfill the regulations' FMLA notice requirements. Finally, as noted earlier, Defendant kept Plaintiff's job open while she was on TLD for several weeks more than the FMLA demands. Thus, any failure to notify Plaintiff more fully of her FMLA rights resulted in no actionable damages.

The court finds no violation of FMLA on this record; but to the extent that any violation has been shown, Plaintiff has not satisfied the court that there was willfulness, and therefore her case would be dismissed as untimely anyway.[3] See *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988) (holding that in order to establish a willful violation of labor laws, a plaintiff must show that "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute.") Because Plaintiff is unable to support her claim that Defendant interfered with her FMLA rights, and because it is undisputed that she received the full twelve weeks of job protection that the FMLA provides, Defendant's motion for summary judgment as to Plaintiff's FMLA claim will be granted.

## III. Retaliatory Discharge Claim

Plaintiff's second cause of complaint is that she was terminated in retaliation for filing an Application for Adjustment of Claim with the Illinois Industrial Commission. Illinois courts recognize an action for retaliatory discharge where employees are discharged in retaliation for exercise of their worker's compensation rights. *Hartlein v. Illinois Power Co.*, 151 Ill. 2d 142, 159, 601 N.E.2d 720, 728 (1992); *Kelsay v. Motorola, Inc.*, 74 Ill. 2d 172, 181, 384 N.E.2d 353, 356 (1978). Such a claim requires a showing that (1) the plaintiff was the defendant's employee before her injury; (2) the plaintiff exercised a right granted by the Worker's Compensation Act; and (3) the plaintiff's discharge was causally connected to her having filed a worker's compensation claim. *Borcky v.*

---

[3] The statute of limitations requires non-willful allegations to be brought within two years and willful allegations to be brought within three years. 29 U.S.C. § 2617(c). As the complaint was filed on December 9, 2002, any claim based on events occurring before December 9, 2000 would be time barred unless they constitute a willful violation of the FMLA.

14

*Maytag Corp.*, 248 F.3d 691, 695 (7th Cir. 2001). As the first two elements are clearly met in this case, the important matter is the causation element.

In retaliatory discharge cases, the employer's intent is often the critical issue. *Dixon Distributing Co. v. Hanover Ins. Co.*, 244 Ill. App. 3d 837, 851, 612 N.E.2d 846, 852 (5th Dist. 1993), *aff'd*, 161 Ill. 2d 433, 641 N.E.2d 395 (1994). Plaintiff points out that the issue of intent or motive is a question of material fact and one which is not normally appropriate for summary judgment. *Jones v. Burkart Foam, Inc.*, 231 Ill. App. 3d 500, 596 N.E.2d 882 (5th Dist. 1992). Plaintiff further argues that an employer's failure to inform an employee of the next available position can be evidence of retaliatory motive, *Hugo v. Tomaszewski*, 155 Ill. App. 3d 906, 508 N.E.2d 1139, 1142 (5th Dist. 1987), and proving that an employer reneged on its promise to rehire an employee can demonstrate retaliatory motive. *Jackson v. Bunge Corp.*, 40 F.3d 239, 243 (7th Cir. 1994).

In this case, Defendant admittedly did very little to inform Plaintiff of open positions and assist in her job search, as Hospital policy places the responsibility to search out and apply for open positions on the employee herself. (Pl.'s 56.1 Stmt. ¶ 20.) Plaintiff did apply for a Phlebotomist and Home Health Care Assistant position, but was not interviewed or hired for either. (*Id.* ¶ 19.) Plaintiff additionally contends that Mr. Cleary promised her she could return to work, and reneged on his promise. (*Id.* ¶ 18.) Plaintiff contends these facts establish retaliatory motive that was causally related to her filing of a worker's compensation claim. (Pl.'s Mem., at 14.)

In a retaliatory discharge case the employee bears the burden of proving all elements of the cause of action; the employer is not required to supply an explanation for the employee's discharge. *Borcky*, 248 F.3d at 696. Nevertheless, "if the employer has a valid, nonpretextual basis for discharging the employee" then the element of causation is not met. *Paz v. Commonwealth Edison*, 314 Ill. App. 3d 591, 594, 732 N.E.2d 696, 701 (2d Dist. 2000).

In this case the undisputed facts defeat any inference of causation. Plaintiff filed her

15

worker's compensation claim on December 1, 2000, (Pl.'s 56.1 Stmt. ¶ 35; Ex. 19 to Pl.'s 56.1 Stmt.), but Defendant did not receive notice of this application until December 8. (Def.'s 56.1 ¶ 16; Cleary Decl. ¶ 7, Ex. 3 to Def.'s 56.1.) On November 14, 2000, well before she ever filed her claim, Plaintiff received a letter from Dorothy Morande informing her that she was being placed on a four-week job search leave of absence, and that if she failed to find another position in the hospital by December 16, she would lose her job. (Def.'s 56.1 ¶¶ 12-13; Ex. 6 to Plaintiff Dep.) Defendant thus notified Plaintiff of her potential termination more than two weeks *before* Plaintiff even filed her worker's compensation claim, and three weeks before Defendant received notice of such claim. Plaintiff's termination letter and Mr. Cleary's deposition both clearly state that she lost her job because she had not secured another position before her job search leave of absence expired. (Def.'s 56.1 ¶ 20, Ex. 8 to Plaintiff Dep.; Cleary Dep., at 68.) The undisputed fact that Plaintiff was notified of the date and reason for her termination prior to her filing the worker's compensation application clearly serves as a valid, nonpretextual reason for her discharge. The fact that Plaintiff's termination occurred two weeks after she filed the worker's compensation claim does not prove retaliatory motive.

Nor is the court persuaded by Plaintiff's argument that Defendant's failure to advise her of open positions and assist her in finding a job at the Hospital demonstrates retaliatory motive. The Defendant's policy is to post job openings on the employee bulletin board, giving employees first shot at positions before the public. (Pl.'s 56.1 Stmt. ¶ 20; Disbrow Dep., at 38-43.) Plaintiff argues that this hands-off approach conflicts with the Hospital's own TLD policy, which assures employees that "every effort will be made to assist [them in finding] . . . a suitable position" following their recovery. (Pl.'s 56.1 Stmt. ¶ 28; Ex. 9 to Pl.'s 56.1 Stmt.) The lack of any effort on Defendant's part to actually assist Plaintiff here may be disappointing, but it does not, without more, establish a causal link between her termination and the filing of the Application.

*Marin v. American Meat Packing Co.*, 204 Ill. App. 3d 302, 562 N.E.2d 282, 286 (1st Dist.

1990), cited by Plaintiff, is not to the contrary. *Marin* observed that the employer's persistent and well-documented attempts to return the plaintiff to work negated any retaliatory motivation; it does not suggest that the absence of such efforts establishes that the employer was in fact motivated to retaliate. Nor does the fact that the Hospital failed to advise her of available positions establish retaliatory motive; in the case she cites, *Hugo v. Tomaszewski*, 155 Ill. App. 3d 906, 508 N.E.2d 1139 (5th Dist. 1987), the plaintiff, a 23-year employee, was discharged when he attempted to return to work with certain restrictions, six months after suffering a work-related injury for which he recovered workers' compensation benefits. The employer asserted that its decision was motivated by loss of business, but the court noted that the employer filled another position soon afterwards, without offering the position to plaintiff. *Id.* at 910, 508 N.E.2d at 1142. Plaintiff here offers no evidence of a specific opening for which she was qualified, nor did the Hospital suggest that a decline in business was the reason for her discharge.

Plaintiff suggests that Defendant reneged on a promise to restore her to her previous position, and cites *Jackson v. Bunge Corp.*, 40 F.3d 239, 243 (7th Cir. 1994), where the employer promised to rehire the plaintiff if she produced a doctor's note, but then reneged, allegedly in retaliation for the plaintiff having filed a worker's compensation claim. Plaintiff asserts that Mr. Cleary told her she could come back to work (Pl.'s 56.1 Stmt. ¶ 18; Plaintiff Dep., at 60-61); she conceded, however, that she understood what he meant: that if a job opened up she might be rehired. (Plaintiff Dep., at 61.) Indeed, Mr. Cleary testified that Plaintiff was "eligible for rehire at any time," (Cleary Dep., at 69), and at oral argument on this motion, counsel for the Hospital confirmed that Plaintiff remains now eligible to return to work for any position for which she qualifies.[4] Nor has Plaintiff offered any evidence connecting Mr. Cleary's alleged broken promise

---

[4] If Plaintiff had prevailed on her claim that her termination was unlawful, the Hospital's stated willingness to rehire her might well defeat any claim for lost pay for any date after a position for which she qualifies became available.

17

with her worker's compensation claim. Plaintiff cannot even remember whether she visited him before or after she filed her worker's compensation application. (Plaintiff Dep., at 59-61.)

Plaintiff has offered no evidence that Defendant was motivated by her workers' compensation claim in discharging her. Defendant is entitled to summary judgment on this claim.

## CONCLUSION

There are no disputes of material fact concerning Plaintiff's FMLA claim; even if the Hospital failed adequately to advise Plaintiff that she was entitled to take unpaid leave following her wrist injury, she remained on the payroll and entitled to return to her original job for well more than 12 weeks after that injury. She therefore suffered no damage as a result of Defendant's alleged violation of FMLA. Nor has she established any causal link between her filing of a workers' compensation claim and her termination. Plaintiff was and remains eligible for rehire by the Hospital.

Defendant's motion for summary judgment (Doc. No. 9-1) is granted.

ENTER:

Dated: September 22, 2004

REBECCA R. PALLMEYER
United States District Judge